335 So.2d 438 (1976)
Richard P. GUIDRY, Plaintiff-Appellant-Respondent,
v.
Charles William ROBERTS et al., Defendants-Appellees-Relators.
No. 58044.
Supreme Court of Louisiana.
June 10, 1976.
Rehearing Denied June 30, 1976.
*440 David W. Robinson, Trial Atty., Watson, Blanche, Wilson & Posner, Baton Rouge, for plaintiff-respondent.
William J. Guste, Jr., Atty. Gen., Kendall L. Vick, Kenneth C. DeJean, Asst. Attys. Gen., Donald Ensenat, Dept. of Justice, New Orleans, for defendants-applicants.
TATE, Justice.
The plaintiff sues for declarative and injunctive relief holding unconstitutional the Louisiana Election Campaign Finance Disclosure Act, La.R.S. 18:1481-93 (Act 718 of 1975). Made defendant are certain legislatively designated officials who receive and process financial reports required by the enactment.
The trial court dismissed his suit but, upon his appeal, the intermediate court held the act unconstitutional. 331 So.2d 44 (La.App. 1 Cir., April 12, 1976). We granted certiorari, 332 So.2d 284 (La. May 27, 1976), under our practice of granting review if the court of appeal renders a judgment declaring a statute unconstitutional (which, if rendered by a trial court, is reviewable by a direct appeal to this court). See Bradford v. Department of Hospitals, 255 La. 888, 233 So.2d 553 (1970).
Principal Issues
The court of appeal held that the reporting officials and supervisory committees designated by the statute were exercising powers entrusted to the executive branch, but they were appointed by the legislature not the governor. Accordingly, these committees and officials were held invalid as entrusted with duties in violation of the separation of powers provision of our state constitution, La.Const. of 1974, Art. 2, Section 2, and as appointed by the *441 legislature contrary to a constitutional provision entrusting the governor with the appointment of the officials in the executive branch, Article 4, Sections 1(A) and 5(H)(1). Some of the powers entrusted to the supervisory committees were also held to violate the constitutional authority of the district attorneys of the state. Article 5, Section 26(B).
Finding that the act could not function without valid supervisory committees and reporting officials, the court of appeal declared the entire act unconstitutional as non-severable.
The principal issues posed to us are:
1. Does the plaintiff, who principally alleges himself to be a contributor to political campaigns, have standing to attack the composition of the supervisory committees or the designation of the reporting officials, who principally receive and monitor reports from candidates? (The contributors are not required to report contributions, as will be seen, nor limited in the amount of legal contributions they may make, although the candidate must identify contributions over certain amounts.)
2. If so, is the legislative selection of the reporting officials and supervisory committees invalid as a legislative invasion of an executive power, and are the functions vested in them an improper allocation of executive functions to legislativelyselected officials?
3. If all or any part of the legislative designation of personnel or of the legislative allocation of function is unconstitutional, are the invalidated portions of the act severable from the other portions, such as those requiring reports of political contributions; so as to permit upholding these other portions, if they are constitutional?
4. If so, are these other portions an unconstitutional invasion of individual rights and liberties of expression, privacy, assembly, free election, property, etc., protected by our state constitution?
I. The Election Campaign Finance Disclosure Act
In general, the attacked statute requires the reporting of information regarding contributions and expenditures involved in campaigns for elective state and local public office, decries certain activities as illegal campaign practices, condemns violation of the act to be a misdemeanor, and establishes the machinery and procedure for administration and enforcement of the provisions of the act.
Essentially, this act is divided substantively into two parts: one pertaining to reporting and public disclosure of campaign contributions and expenditures; and the other setting forth certain campaign practices which are declared illegal and prohibited. The court of appeal did not reach the issue of the validity of these substantive regulations, because of its holding that they were nonseparable from the administrative and enforcement provisions which it invalidated.
Disclosure Provisions:
Candidates, La.R.S. 18:1482(1), and political committees formed to support or oppose any candidate or political party at an election, La.R.S. 18:1482(2), must file with designated reporting officials certain reports which principally include the total amount of all contributions and expenditures, but which also list the name and address of those contributors who give in excess of certain amounts. 1486. The reporting amounts are $1,000 for any statewide office, $500 for any district office, and $250 for all other offices. 1482(11). Anyone else who makes an expenditure or receives a contribution in excess of five hundred dollars, other than to or from a candidate or political committee, shall also file a similar report. 1486 G.
The reporting officials are: the secretary of the Senate, with respect to senatorial candidates; the clerk of the House of Representatives, with respect to candidates for the house; and the legislative *442 auditor, with respect to all other candidates. 1482(12). These reporting officials are required to make all such reports received available for public inspection immediately upon receipt of them. 1486 H.
Prohibited Campaign Practices:
Section 1488 prohibits certain campaign practices. These include:
No person shall give any financial or material support to or in support of a candidate or political committee in the name of another. No person shall solicit or accept from, and no candidate or committee shall pay to, another any thing of value for the purpose of endorsement, support or opposition to a candidate.
No corporate contributions may be made except by check and when authorized by the board of directors.
No candidate or committee, or anyone acting on their behalf, shall pay for the privilege of the candidate or his representative appearing at a charitable or civic meeting or any festival or fair.
No candidate, political committee, or person required to make a report shall make any expenditure from an anonymous contribution. (Anonymous contributions, if received, are required to be paid over to non-political charitable, civic, etc. activities.)
Additionally, under Section 1489 "[n]o candidate political committee, or other person shall give or accept a contribution in return for a promise" of "a position of public employment or any appointive governmental office." (The violation of Section 1489 is declared to be a misdemeanor punishable by fine not in excess of $500.)
Criminal Sanctions:
In addition to the criminal misdemeanor-fine sanction provided by Section 1489, Section 1491 provides a similar sanction for other violations of the statute, as follows:
"* * * any candidate; any campaign treasurer or deputy treasurer of any candidate; any chairman, vice chairman, campaign treasurer or deputy treasurer of any political committee; or any person, who is subject to the provisions of this Part, who knowingly and willfully:
(1) accepts or makes a contribution prohibited by this Part;
(2) fails to file the reports required by this Part;
(3) fails to report any contribution or expenditure required to be reported by this Part;
(4) files a false report under the provisions of this Part;
(5) makes an expenditure prohibited by this Part or in any manner prohibited by this Part;
(6) makes or accepts a contribution or solicits or receives funds or anything of value in violation of R.S. 18:1488 or otherwise knowingly and willfully violates the provisions of R.S. 18:1488, except that no person shall be found in violation of this Part for accepting a contribution made in violation of Subsection C [pertaining to corporate contributions] of R.S. 18:1488, rather only the person making such contribution shall be found in violation thereof: or
(7) otherwise violates the provisions of this Part,
shall be guilty of a misdemeanor and shall be fined not in excess of five hundred dollars, and if found guilty of knowing and willful failure to report funds received and deposited or otherwise accepted in writing or expended as provided herein may further be fined an amount not in excess of one and one-half times the amount not properly reported."
Machinery for Processing of Campaign-Finance Reports after Receipt and for Enforcement of Statute:
As earlier noted, the campaign finance reports of all candidates for elective office are required to be filed either with the *443 secretary of the Senate (senatorial candidates), the clerk of the House (candidates for the house), or the legislative auditor (all other candidates), by whom they are to be made available for public inspection.
Section 1492 ("Enforcement") provides for the further processing of these reports after they are filed. The court of appeal held that the powers conferred by this section constituted an attempt to vest functions of the executive branch in legislatively-selected officers. Because of this, and because it also held that even the designation of the reporting officials to receive the reports constituted legislative usurpation of administrative powers properly exercised by the executive branch, our intermediate brethren held the act unconstitutional.
We will discuss Section 1492 in more detail in III below. For the time being, it is sufficient to note that the enactment creates three supervisory committees composed of legislatively-selected officers.
In general, these committees serve not only the function of receiving and preserving the reports, and making them a matter of public record. They are also charged with the primary responsibility of initiating investigations into complaints of non-compliance with the provisions of the statute.
Once the applicable supervisory committee has made a determination that a violation has occurred it may then refer the matter to the attorney general who, in turn, may refer it to the district attorney having jurisdiction of the offense. Criminal actions shall be instituted by the district attorney only on the basis of information forwarded to him by a supervisory committee through the attorney general.
We now turn to discussion of the principal issues:
"Standing?" (Part II);
"Reporting, public disclosure, and enforcement machinery a violation of separations of powers?" (Part III);
"Severability of enforcement provisions" (Part IV); and
"Constitutionality of other provisions of the act" (Part V).
II. Does the Plaintiff have Standing to Attack the Enforcement Provisions'?
The court of appeal declared the statute unconstitutional because it found the enforcement provisions constitutionally defective. The defendants contend that the plaintiff, who sues primarily on the basis of his past and intended future interest in contributing to political campaigns, has no standing or interest to attack the composition of the supervisory committees created by these enforcement provisions.
The duties of these committees include the receipt of sworn complaints by any person who believes any provision of the act has been violated. Section 1492 B. The criminal sanctions of the act apply not only to candidates, but also to persons who make contributions, 1491(1), (6) (quoted above in full), in violation of the act. Contributions may not be lawfully made, for instance, (a) indirectly or in the name of another, 1488 A, or (b) in payment for an endorsement of a candidacy, 1488 B, or (c) in exchange for the promise of public employment or governmental appointment, Article 1489.
As enacted, the act provides that complaints of these and other violations shall be investigated by the supervisory committees and, if found meritorious, referred to prosecuting officers for criminal prosecution. 1492 B. In fact, criminal sanctions by terms of the enactment may be sought by prosecuting officers only on the basis of information furnished by these supervisory committees. 1492 B. As a substantial political contributor, the plaintiff may be subject to prosecution if he violates the statute's provisions.
Under these facts, the plaintiff has standing to contest the enforcement machinery:
As the United States Supreme Court held, in rejecting a quite similar attack on the standing of the plaintiffs to *444 contest the constitutionality of the Federal Election Campaign Act, 2 U.S.C. 431 et seq. (1971): "Party litigants with sufficient concrete interests at stake may have standing to raise constitutional questions of separation of powers with respect to an agency designated to adjudicate their rights." Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 681, 46 L.E.2d 659 (1976). The plaintiff, as an active contributor to political campaigns, has shown that he has a sufficient concrete personal interest adverse to the defendants as to present to us a justiciable controversy admitting specific relief through a declaratory or injunctive decree of a conclusive character, as distinguished from an advisory opinion as to what the law might be upon a merely hypothetical statement of facts. Hainkel v. Henry, 313 So.2d 577 (La.1975); Louisiana Independent Auto Dealers Ass'n v. State, 295 So.2d 796 (La.1974).
III. Separation of Powers: Reporting, Public Disclosure, and Enforcement Machinery
By our state constitution, the powers of our state government are divided into three separate branches: legislative, executive, and judicial. Article II, Section 1. Our constitution further provides: "* * * no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." Article II, Section 2.
The intermediate court held that the statutory administrative powers entrusted to the reporting officials and supervisory committees constituted a delegation of the power to execute the laws. This could not, in that court's view, be entrused to a legislatively appointed instrumentality without violating the executive function of the governor to "see that the laws are faithfully executed," Article 4, Section 5(A), through officers or agencies of the executive branch, Article 4, Section 1(A), or officials appointed by him, Article 4, Section 5(H).[1]
At the outset, it is clear that the reporting officials (the secretary of the Senate, the clerk of the House, and the legislative auditor, 1482(12)) and the members of the supervisory committees (these officials and the executive director of the Legislative Council, 1492A[2] designated by the statute are all selected by the legislative branch. The query, however, is whether the functions and powers entrusted to them violate any power exclusively vested in the executive branch, especially the duty of the governor to "see that the laws are faithfully executed." Article 4, Section 5(A).
We have already referred to the duties of the reporting officials to receive filings of campaign-finance reports, make them public, and refer them to the appropriate supervisory committee. 1486; 1492B(1). The principal duties of the supervisory committees are set forth in Section 1492B (1)[3] set forth in footnote below. Pretermitting *445 the regulation of criminal actions provided by the last paragraph of this subsection (italicized in the footnote)which we shall discuss later, these duties of a committee include:
1. To review the campaign-finance reports for their compliance with the statute;
2. To receive complaints from any person who believes the statute has been violated, and to investigate same;
3. To forward information concerning alleged violations of the act, obtained either through its review of the reports or its investigation of complaints, filed with it, to the attorney general for further investigation, if the committee determines a knowing and willful violation of the statute is indicated (except that if the violation relates to a campaign for the office of attorney general, then the committee will forward it to the district attorney for the parish of the indicated violation).[4]
Clearly, the power of the reporting officials and committees to receive campaignfinance reports for public access to them performs no function and usurps no power exclusive to the executive branch. Not so unambiguously perhaps, the reviewing of the reports for compliance with the act, and the investigation of complaints of violations of it, do not invade any exclusive executive prerogative "to see that the laws are faithfully executed," Article 4, Section 5(A), any more than do, for instance, legislative investigations or audits of the fiscal records of the state, Article 3, Section 11.
In Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the United States Supreme Court considered and rejected similar contentions raised before it with regard to a federal campaign-finance *446 act similar in these respects to ours. The court held that "recordkeeping, disclosure and investigative functions," 96 S.Ct. at 678, "functions relating to the flow of necessary informationreceipt, dissemination, and investigations", 96 S.Ct. at 691, may be validly exercised by a legislatively appointed committee, 96 S.Ct. at 691. Thus, they do not violate any executive function to execute laws.
The court drew a clear distinction between these powers, as contrasted with more substantial powers to enforce the law (such as the power to institute civil actions to enforce the act). Only these latter functions were held to violate the power of the executive branch, if exercised by a legislatively appointed body instead of an executive agency.
As our summary above indicates (see also footnote 3), none of the powers granted by the Louisiana act to the reporting officials or supervisory committees are of this latter naturei. e., those by which the laws are actually executed by the legislatively appointed committees. The powers granted these legislatively appointed instrumentalities instead pertain only to receipt, dissemination, and investigation of reports, and to referral of them to appropriate prosecutorial officersgovernmental activities which neither historically nor functionally fall within the exclusive power of the executive branch to "see that the laws are faithfully executed,", Article 4, Section 5(A). See Buckley v. Valeo, cited above, at 96 S.Ct. at 691.
No authority is cited to us contrary to this holding.
No authority is cited to us that rests solely in the executive branch the receipt and dissemination of reports with regard to valid election laws, or that vests solely within executive control investigation of violations thereof. (As a matter of fact, this court has in the past disapproved efforts to vest exclusive control of the election machinery in gubernatorial appointees.
State ex rel. Ward v. Board of Supervisors of Elections, 186 La. 949, 173 So. 726 (1937). Ours is a system not only of separation of powers among the branches of government, but also of checks and balances by the other branches to the powers of each branch.)
In summary, we cannot read our state's separation of powers provision as inflexibly prohibiting to none but the executive branch the power to receive election-finance reports and complaints of election-law violations, to evaluate them, and to forward to prosecutorial officers any violations suspected as a result.
Consequently, neither the functions entrusted to the supervisory committees, nor their method of legislative selection, violate the constitutional separation of powers between the legislative and executive branches. We therefore disagree in this respect with the court of appeal's holding to the contrary.
Limitation on the Power of the District Attorney to Prosecute Violations of Election Campaign Finance Law Nevertheless, as the court of appeal correctly held, one provision in La.R.S. 18:1492(B)(1) unconstitutionally vests in these legislatively-appointed committees the power to determine whether and which violations shall be criminally prosecuted. The last sentence of the provision (see italicized paragraph in footnote 3) provides that criminal prosecutions by a district attorney (or attorney general) shall be initiated "only on the basis of information forwarded to him by a supervisory committee".
The cited sentence thus violates the exclusive power entrusted by our constitution to the district attorney to prosecute offenses in his district; for, as provided by Article 5, Section 26(B), the district attorney "shall have charge of every criminal prosecution by the state in his district". The power of the district attorney to initiate *447 criminal prosecution for such offenses in his district (or not to) appears to be limited only by the provision of Article 4, Section 8, that, for cause when judicially authorized, the attorney general may institute, prosecute, or intervene in a criminal action or proceeding.
The cited sentence of Section 1492(B)(1) attempts to limit the power of these constitutionally created officers to prosecute violations of the statute to include only such violations as the supervisory committee discovers or receives, and then chooses to refer to the attorney general or district attorney. The provision thus represents an unconstitutional invasion of the powers of these officers conferred on them by Article V, Section 26(B), and Article 4, Section 8.
We therefore declare this provision (the last sentence of La.R.S. 18:1492(B)(1)), and this provision only, unconstitutional.
IV. Severability: Does Invalidation of the Enforcement Provision Invalidate the Entire Act?
The plaintiff contends that, if an enforcement provision of the statute is invalidated, the entire act (including its reporting and disclosure provisions) must fall, since all are inextricably interwoven.
The Election Campaign Finance Disclosure Act was enacted by Act 718 of 1975. Section 3 of the statute provides:
"If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable." The severability clause creates a presumption of the enactment's severability in fact. State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477, 484 (1949).
The ultimate test of severability, as we pointed out in Roy v. Edwards, 294 So. 2d 507, 511 (La. 1974), is: "* * * it is well established that the unconstitutionality of a portion of a statute (or ordinance) does not necessarily invalidate the whole, particularly where there is a severability clause as here. But it is equally well settled that such rule applies only when the unconstitutional part is independent of and separable from the rest. If it is so interrelated and connected with the other portions as to raise the presumption that the legislative body would not have enacted one part without the remainder, then the entire enactment is null."
We find no constitutional deficiency in the sections of the act providing criminal penalties for specified violations of the statute, La.R.S. 18:1489, 1491 (quoted in full, Part I above, "Criminal Sanctions"), and no substantial contention is made as to their invalidity.[5] These provisions thus adequately define the criminal offenses punishable by the act. The offenses are within the power of the district attorney to prosecute, as in the case of any other violation of a penal statute.
Standing alone and independent of the invalidated provision, these provisions provide a separable and independent definition of criminal offense and authority for the district attorney to prosecute for such offenses. Under the test set forth by Roy v. Edwards, quoted above, we find that the invalidated provision is severable from these other enforcement provisions.
The invalidated provision, which unconstitutionally attempts to limit a district attorney to prosecute only violations reported to him through the supervisory committees, is not so interrelated and connected *448 with the validly provided criminal penalties as to suggest that the legislature would not, without the invalidated provision, have provided any criminal penalties whatsoever for the statutory violations set forth. We are reenforced in this interpretation of the statute as a whole by the presumption of severability in fact as well as by law, which arises from the legislature's provision of a severability clause. By it, the legislation intended to assure that the main purposes of the law and the validity of the entire enactment would not be thwarted if a particular severable provision thereof were held by the courts to be invalid.
V. Constitutionality of Other Provisions of the Act
The plaintiff contends that the substantive regulation of campaign financing is unconstitutional in numerous respects. In his standing based solely upon his status as a substantial contributor to political campaigns, the principal attack is made upon the reporting and disclosure regulations, by which candidates must report not only the total amounts of contributions and expenditures, but must also identify by name any individual contributor who gives him in excess of a reporting amount. 1485C. The reporting amount is set at $1,000 for elections involving statewide office, $500 for district office, and $250 for all other offices. 1482(11).[6]
With regard to those provisions requiring the reporting and disclosure of campaign contributions, the plaintiff contributor contends that the Act violates Article I, Section 1 of the Louisiana Constitution of 1974, and the basic freedoms encompassed in and to be held "inalienable by the State" by the mandate of Section 1, including due process of law (Section 2), equal protection of the laws (Section 3), right to own, control, use, enjoy and dispose of private property without unreasonable restraint (Section 4) right to privacy (Section 5), freedom of express (Section 7), freedom of assembly and petition (Section 9), and the right to vote (Section 10).
As the plaintiff contends, the individual rights guaranteed by our state constitution's declaration of individual rights (Article I) represent more specific protections of the individual against governmental power than those found in the federal constitution's bill of rights, and they may represent broader protection of the individual. Nevertheless, we find persuasive the reasoning of the United States Supreme Court in Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659, in rejecting similar attacks based on freedom of expression and other individual freedoms, upon the federal acts far more stringent regulation: For instance, the reporting and public disclosure provision required public identification of every contributor who gave in excess of $100, and it prohibited (rather than, as in Louisiana, merely required disclosure of) individual contributions in excess of $1,000.
In Buckley, the court recognized that compelled disclosure may represent a significant encroachment upon the political rights of individuals. It must therefore receive exacting scrutiny to ascertain whether there is a relevant correlation or substantial relation between the governmental interest sought to be advanced and the information required to be disclosed, and to ascertain that the government interest is sufficiently important to the free functioning of fundamental institutions so as to outweigh the possibility of undue infringement upon the political freedom of the individual. 96 S.Ct. at 656-57.
In upholding the federal disclosure requirements (far more stringent than Louisiana's), the court upheld them as not unreasonable in the light of their importance in the vindication of the right of *449 the people to free and honest elections. The court stated, 96 S.Ct. at 657-58:
"The governmental interests sought to be vindicated by the disclosure requirements are of this [important] magnitude. They fall into three categories. First, disclosure provides the electorate with information `as to where political campaign money comes from and how it is spent by the candidate' in order to aid the voters in evaluating those who seek Federal office. It allows voters to place each candidate in the political spectrum more precisely than is often possible solely on the basis of party labels and campaign speeches. The sources of a candidate's financial support also alert the voter to the interests to which a candidate is most likely to be responsive and thus facilitates predictions of future performance in office.
"Second, disclosure requirements deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity. This exposure may discourage those who would use money for improper purposes either before or after the election. A public armed with information about a candidate's most generous supporters is better able to detect any post-election special favors that may be given in return. And, as we recognized in Burroughs v. United States, 290 U.S., [534], at 548, 54 S.Ct., [287] at 291 [78 L.Ed. 1380], Congress could reasonably conclude that full disclosure during an election campaign tends `to prevent the corrupt use of money to affect elections.' In enacting these requirements it may have been mindful of Justice Brandeis' advice:
"Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the efficient policeman.' * * *
[Third, recordkeeping and disclosure provide an essential means of administering the act.]"
Even before the United States Supreme Court decision in Buckley v. Valeo, the district court herein upheld the disclosure provisions of the Louisiana act. It discussed pertinent authorities, including the lower federal-court decision in Buckley and Deras v. Myers, 535 P.2d 541 (Oregon, 1975) (which invalidated spending prohibitions in an Oregon campaign-finance act). In its excellent opinion, the court concluded:
"There are several approaches to the regulation of campaign financing. There can be a limit on contributions, both as to amounts and the type of contributor; limit on expenditures; and/or reporting requirements. Generally, the principal purpose of disclosure is to identify sources and expenditures, not to regulate them. Louisiana has chosen to follow the latter regulatory course in dealing with the matter of campaign financing. * * *
"It is one thing to restrain freedom of expression as the Oregon statute was held to do; and another to require disclosure under certain circumstances where there are no other restraints against either the amount of contribution or the exercise of free speech in the support of or opposition to political candidates. Likewise, the resolution of federal constitutional issues does not necessarily dispose of the Louisiana constitutional issues. For these reasons, we must adjudicate this case within the framework of the recognized principles to which we have heretofore adverted.
"It has been stated that `effective publicity' is required if effective control of campaign contributions is to be achieved. While it is true, as counsel for plaintiff contends, that `in order to insure his privacy * * * a citizen must refrain from making a contribution in excess of the prescribed amount and must refrain from taking part in the administration of campaign committees', the fact remains that there is no stigma attached to the making of political contributions; on the contrary, the making of political contributions has been *450 traditionally recognized in Louisiana as a legitimate and desirable form of political participation.
"If we follow plaintiff's argument to its logical conclusion, there could be no disclosure requirement in any scheme of campaign finance regulation that the legislature might devise. If the disclosure requirement was limited to candidates, we have the possibility of the same political committee evils demonstrated in the case of the Committee to Re-elect the President. In the final analysis, the reporting requirement provides the only effective means of affording "openness" in the election process. If the result of that requirement is incidental infringement upon the right of privacy, the court finds that the requirement does not so unduly infringe the protected freedom as to justify declaring the statute unconstitutional."
Vagueness and Equal Protection:
The plaintiff contributor also attacks the contribution and disclosure provisions on the grounds of vagueness and of a denial of equal protection (because large contributions need be publicized, but not small ones).
As with the federal statute, the Louisiana statute is not vague in the constitutional sense. Buckley v. Valeo, above-cited.
"Due process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, for `no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed. * * *" Where First Amendment rights are involved, an even "`greater degree of specificity' is required. * * *" Buckley, at 96 S.Ct. at 662-633.
In United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954), the United States Supreme Court upheld federal legislation requiring designated reports from those receiving contributions or expending monies to pass or defeat national legislation. In so doing, it noted, 347 U.S. at 618, 74 S.Ct. at 812, 98 L.Ed.2d 989; * * * if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise. * * * And if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction."
We agree with the trial court that these tests are met by the principal provisions regulating political contributions and requiring their disclosure if in excess of certain amounts: "In the opinion of the Court, the Campaign Finance Act, taken as a whole, has fairly described the general class of offenses to which the statute is directed."
We also find no merit in the claim that the disclosure requirements violate equal protection rights, simply because they require disclosure of contributions of individuals only above certain amounts. See Buckley v. Valeo, cited above. In accord with the reasoning in Buckley (involving a far lower limit), our trial brother stated: "* * * While it is admittedly difficult to draw the line, a line has to be drawn somewhere. If the evil sought to be averted is the undue influence of the large contribution, then a threshold amount so low as to be manifestly below the point of reasonable fear of influence would be difficult to justify. But the amounts here appear reasonable, dependent upon the office involved, and particularly so in the case of the lesser offices. Under these circumstances, the court cannot say that the legislative classification is unreasonable."
Other Contentions of Invalidity:
In Article 14 of his petition, the plaintiff points out six alleged ambiguities in which isolated provisions of the act are allegedly vague and indefinite. Alleged *451 ambiguities (c), (d), and (e) concern minor provisions of a peripheral and severable nature, which need not be considered here, cf., State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477, 484 (1949); for the plaintiff is not shown to have sufficient interest by way of concrete effect upon him as to entitle him to standing to question their possible application in the merely hypothetical situations noted. As to alleged ambiguities (a), (b), and (f), for the reasons stated in the paragraphs immediately preceding this one, they are not subject to constitutional invalidity because of vagueness, for they fairly describe the general conduct regulated so as to provide adequate notice to those affected by them.
VI. Conclusion:
The trial court held the act constitutional. The judgment of the court of appeal reversing the trial court and declaring the act unconstitutional never became executory, La.C.Civ.P. art. 2167(2), Discon v. Saray, Inc., 262 La. 997, 265 So.2d 765 (1972), and the trial court judgment remained validly in effect and enforceable until now.
The effect of our present judgment is to uphold the contribution and reporting system and to strike down as unconstitutional only the sentence of La.R.S. 18:1492B(1),[7] which limits prosecution of criminal violations to those recommended by a supervisory committee (a completely severable provision from the reporting, disclosure, and regulatory features of the statute). Our judgment to this effect will not become final and executory until rehearing delay or action is completed. La.C.Civ.P. art. 2167.
We are asked to stay these proceedings, in the event we declare any portion of this act unconstitutional, in order to permit the legislature during its current session to remedy the deficiency. If the legislature desires to make any changes in the act because of our holding, it has ample opportunity to do so during the current session now in progress. A stay order is not indicated under the circumstances shown.

Decree
For the reasons assigned, we affirm the judgment of the court of appeal insofar as it held one paragraph (see footnote 7 above) of the Election Campaign Finance Disclosure Act, La.R.S. 18:1492 et seq., unconstitutional; but its decree is otherwise reversed, and the judgment of the district court holding the act constitutional is reinstated and affirmed in all other respects. Except for judgment declaring the final sentence of La.R.S. 18:1492B(1) (Act 718 of 1975) unconstitutional, the plaintiff's demands are dismissed, and he is assessed with all costs of these proceedings.
COURT OF APPEAL AFFIRMED IN ONE RESPECT AND REVERSED IN OTHERS; DISTRICT COURT JUDGMENT REINSTATED AND AFFIRMED, EXCEPT FOR MODIFICATION THUS RESULTING.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
In my view the Court properly held that plaintiff has standing to bring this suit.
As I read and understood the contested Louisiana Election Campaign Finance Disclosure Act (Act 718 of 1975, La.R.S. 18:1481-93), it is so fraught with constitutional infirmities it is completely unconstitutional. In this opinion I, of course, agree *452 with the Court's holding striking down Section 1492B(1) of Title 18, which limits prosecution of criminal violations to those recommended by a supervisory committee. I cannot agree, however, that this unconstitutional section of the Act is severable from its other provisions.
I acknowledge the authority which prescribes that, as a general proposition, the unconstitutionality of a portion of a statute does not necessarily invalidate the whole, particularly where there is a severability clause. But the rule applies only when the unconstitutional part is independent of and separable from the rest. If it is so interrelated and connected with the other portions as to raise the presumption that the legislative body would not have enacted one part without the remainder, then the entire enactment is null. Gaudet v. Economical Super Markets, Inc., 237 La. 1082, 112 So.2d 720 (1959); State v. Baggott, 212 La. 795, 33 So.2d 523 (1948); Ricks v. Close, 201 La. 242, 9 So.2d 534 (1942); State ex rel. Chess & Wymond Co. of Louisiana v. Grace, 188 La. 129, 175 So. 825 (1937).
That this legislation would not have been enacted without the enforcement provision which it finds unconstitutional is in effect conceded by the majority. The opinion reveals that the Court is asked to stay these proceedings in order to permit the Legislature during its current session to remedy the deficiency. If it is necessary to remedy the deficiency created by the invalidity of the enforcement provision, all concerned with the Act's effectiveness must realize it is ineffective without the unconstitutional enforcement provision. In other words, the Act's provisions are inextricably related and inseparable, and the unconstitutionality of the enforcement provision renders the entire Act unconstitutional. Without the enforcement provisions the Act is merely directory and ineffective.
I am moreover of the opinion that the Act is an unconstitutional and unwarranted infringement on basic protections afforded by the Bill of Rights of both the federal and state constitutions. In my view compelled disclosure, in itself, can seriously infringe on privacy of association and beliefs guaranteed by the First Amendment to the Federal Constitution, and Articles I and XI of the State Constitution. Significant encroachment on these rights of the sort that compelled disclosure imposes cannot be justified by a mere showing that some legitimate governmental interest is involved. When the individual's constitutionally guaranteed rights are sought to be subordinated to the interests of the State, the effort must survive exacting scrutiny. No overwhelming State interest is disclosed in this record and the Act cannot withstand the exacting scrutiny the law requires. Under these conditions the Act is not entitled to the presumption of validity usually accorded legislative enactments. NAACP v. Alabama, 357 U.S. 449, 78 Ct. 1163, 2 L.Ed. 2d 1488 (1958); Southland Corporation v. Collector of Revenue, 321 So.2d 501 (La. 1975).
Rights secured to Louisiana citizens under the Constitution of 1974 are far broader and more definitely articulated than corresponding rights in the Federal Constitution. Examples of this are found in such guarantees as the secret ballot (Art. XI, § 2), the right to individual liberty (Art. I, § 3), the right to property (Art. I, § 4), the right to privacy (Art. I, § 5), freedom of expression (Art. I, § 7), and the right of assembly and petition (Art. I, § 9). And the constitution commands the government to hold these rights inviolate. (Art. I, § 1).
In addition, the Act violates Article II of the Louisiana Constitution which declares:
"Section 1. The powers of goverment of the state are divided into three separate branches: legislative, executive and judicial.
"Section 2. Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." *453 In setting up the reporting system and the legislative committee formed under the authority of the Act, the Legislature has departed from the role the Constitution prescribes and which tradition and custom require. The Committee to which reports are required to be made is not, in that capacity, performing a legislative function. Nothing in the committee's duties and responsibilities pertain to inquiry, investigation or study in aid of legislation. To the contrary, the committees' duties and responsibilities are administrative in nature involving execution of the laws, a function properly within the realm of the executive department. It is to the Governor that the Constitution delegates the authority to "see that the laws are faithfully executed." La.Const. Art. IV, § 5 (1974). When the Legislature usurps these prerogatives the Constitution is violated.
This law offends the traditional American concept of free and open elections and will, in my view, impose unwarranted rerestraints upon essential rights guaranteed by our Constitution.
I respectfully dissent.
NOTES
[1] For the moment, we pretermit the distinguishable issue that the separation-of-powers principle is also violated by the delegation to the supervisory committees, in derogation of the district attorneys' powers, of the determination of whether criminal prosecutions will be instituted for violations of the statute. But see text below.
[2] La.R.S. 18:1492A provides: "The following supervisory committees are established:

"1) for candidates for senator: the secretary of the Senate, the legislative auditor, and the executive director of the Legislative Council; 2) for candidates for the House of Representatives: the clerk of the House, the legislative auditor, and the executive director of the Legislative Council; 3) for other candidates and for other persons required to file reports under the provisions of this Part: the secretary of the Senate, the clerk of the House, the legislative auditor, and the executive director of the Legislative Council."
[3] "The reports filed under the provisions of this Part shall be referred by the reporting officials to the respective supervisory committees who may review them for compliance with the provisions of this Part. In addition, any person who believes a violation of this Part has occurred may file a sworn complaint with the appropriate supervisory committee. If the supervisory committee determines that there is substantial reason to believe that a violation of this Part has occurred, it shall expeditiously make a thorough investigation of the matter complained of. When the results of a supervisory committee's review of reports or investigation of a complaint indicate that a knowing and willful violation of this Part has occurred, the supervisory committee shall forward all information concerning the alleged violation to the attorney general who shall review such information and make such investigation as he shall deem necessary to determine if a violation has occurred; except, when the results of a supervisory committee's review of reports or investigation of a complaint indicate that a violation of this Part has occurred with regard to a campaign for the office of attorney general, the supervisory committee shall forward all information concerning the alleged violation to the district attorney for the parish wherein such alleged violation occurred, who shall immediately proceed with such criminal actions provided by this Part as are justified by the facts of the situation. When the attorney general determines that there is substantial reason to believe that a violation has occurred, he shall forward all information concerning such violation to the district attorney for the parish wherein such alleged violation occurred, who shall immediately proceed with such criminal actions provided by this Part as are justified by the facts of the situation, unless the violation occurred with regard to a campaign for the office of district attorney for said parish, in which event the attorney general, for cause, when authorized by the court which would have original jurisdiction and subject to judicial review, shall proceed with such criminal actions provided by this Part as are justified by the facts of the situation.

"Criminal actions shall be initiated under the provisions of this Part only by the district attorney and only on the basis of information forwarded to him by a supervisory committee through the attorney general, or directly, as provided in this Part, except in the case of campaigns for district attorney, in which case criminal actions shall be initiated under the provisions of this Part only by the attorney general as provided in this Part and only on the basis of information forwarded to him by a supervisory committee as provided in this Part." (Italics ours.)
[4] The further provisions relate to subsequent processing by the attorney general or district attorney of such potential violations referred to these officials by the supervisory committees. Their essence is that such official receiving the referral shall investigate it and, if he finds substantial reason to believe a violation occurred, he shall forward it to district attorney or other appropriate prosecuting official, who shall proceed with such criminal action as is "justifiable by the facts of the situation."

For present purposes, we need only note that such further actions by prosecutorial officials do not involve the supervising committees nor any issue before us of unconstitutionality.
[5] In the present case, we need not consider the probable severability of the public disclosure requirements, serving distinct values within the intendment of the act, from the provisions providing for criminal prosecutions for violations of the act.
[6] The statute contains precise definitions of "statewide office", 1482(8), and of "district office", 1482(9).
[7] The invalidated provision of La.R.S. 18:1492B(1):

"Criminal actions shall be initiated under the provisions of this Part only by the district attorney and only on the basis of information forwarded to him by a supervisory committee through the attorney general, or directly, as provided in this Part, except in the case of campaigns for district attorney, in which case criminal actions shall be initiated under the provisions of this Part only by the attorney general as provided in this Part and only on the basis of information forwarded to him by a supervisory committee as provided in this Part."