545 So.2d 1031 (1989)
STATE of Louisiana Through the BOARD OF ETHICS FOR ELECTED OFFICIALS as the Supervisory Committee on Campaign Finance Disclosure
v.
Douglas D. "Doug" GREEN, et al.
No. 89-CC-0546.
Supreme Court of Louisiana.
June 20, 1989.
Rehearing Granted September 21, 1989.
R. Gray Sexton, Maris LeBlanc McCrory, Baton Rouge, for applicants.
William J. Guste, Jr., Atty. Gen., Charles J. Yeager, Asst. Atty. Gen., Jack M. Dampf, D'Amico, Curet & Dampf, R. Gordon Kean, Jr., Kean, Miller, Hawthorne, Darmond, McCowan & Jarman, Baton Rouge, Emile Rolfs, III, Paul T. Gallagher, Mangham, Hardy, Rolfs, Bailey & Abadie, Lafayette, for respondent.
Jerry J. Guillot, Brusly, David R. Poynter, Baton Rouge, amicus curiae for State Legislature.
PIKE HALL, Jr., Justice Ad Hoc.[*]
The issue in this case is whether La.R.S. 18:1511.5 A, which authorizes the Supervisory Committee on Campaign Finance Disclosure to file civil proceedings in order to collect penalties for violations of the Campaign Finance Disclosure Act (La.R.S. 18:1481 et seq), is unconstitutional. The Court of Appeal, First Circuit, reversing a *1032 district court decision, held that section of the Act unconstitutional. 540 So.2d 1185 (La.App. 1st Cir.1989). For reasons expressed in the court of appeal opinion and in this opinion, we affirm.
FACTS
After conducting an investigation pursuant to the provisions of the Campaign Finance Disclosure Act ("the Act"), the State of Louisiana through the Board of Ethics for Elected Officials as the Supervisory Committee on Campaign Finance Disclosure ("the Committee") filed a Petition for Rule to Show Cause against various defendants concerning alleged violations of the Act. The petition sought a rule nisi ordering the defendants to show cause as to why they should not be found to have "knowingly and willfully made loans through or in the name of another to the Doug Green Campaign Committee, Inc.", in violation of La.R.S. 18:1505.2 A, and "knowingly and willfully inaccurately disclosed the source of the loans", in violation of La.R.S. 18:1505.1 C.[1] The petition also requested that defendants show why appropriate civil penalties of up to a maximum of $500 per violation of 18:1505.2 A, pursuant to La. R.S. 18:1505.5, and up to a maximum of $70,000 for the violation of 18:1505.1 C, pursuant to La.R.S. 18:1505.4 B, should not be imposed.[2]
In addition to the petition, plaintiff filed interrogatories and requests for production of documents, noticed the taking of depositions, and issued subpoenas duces tecum against several of the defendants. Various defendants filed motions for protective orders from all discovery by plaintiff, arguing that plaintiff could not constitutionally prevail on the merits because La.R.S. 18:1511.5 A violates Article II, Sections 1 and 2 and Article IV, Section 5(A) of the Louisiana Constitution of 1974.[3]
The Attorney General of Louisiana filed a motion of intervention seeking to intervene into the proceedings as a party plaintiff on the bases that the Attorney General is legal counsel for all state boards and commissions unless otherwise provided by law and where the constitutionality of a statute is put at issue, the Attorney General is an indispensable party.[4] The trial court granted the petition for intervention.
Thereafter, the trial court denied defendants' motions for a protective order and ordered the defendants to comply with all discovery requests. The trial court based *1033 its ruling that the Campaign Finance Disclosure Act did not violate the separation of powers provision of the Louisiana Constitution on the following findings of fact:
1. THE BOARD OF ETHICS FOR ELECTED OFFICIALS IS PART OF THE DEPARTMENT OF CIVIL SERVICE; 2. THE DEPARTMENT OF CIVIL SERVICE IS ESTABLISHED IN THE EXECUTIVE BRANCH OF THE GOVERNMENT; 3. THE BOARD OF ETHICS FOR ELECTED OFFICIALS IS AN EXECUTIVE BRANCH BOARD; 4. THE BOARD OF ETHICS IS THE SUPERVISORY COMMITTEE AND THUS MUST ADMINISTER AND ENFORCE THE CAMPAIGN FINANCE DISCLOSURE ACT AS PROVIDED IN ITS RULES AND PROCEDURES; 5. THE LEGISLATURE HAS PLACED ENFORCEMENT AUTHORITY OF THE MATTERS WITHIN THE PURVIEW OF THE BOARD OF ETHICS AND "EACH ETHICS BODY" IN THE JUSTICE DEPARTMENT OF THE STATE. THE ENFORCEMENT OF THE PROVISIONS OF THE CAMPAIGN FINANCE DISCLOSURE LAW BY THE FILING OF LAWSUITS IS ENTRUSTED TO THE ATTORNEY GENERAL OF THE STATE OF LOUISIANA AS THE OFFICIAL ATTORNEY FOR ALL ETHICS COMMITTEES OR BODIES AND THERE IS NO DISPUTING THE FACT THAT THIS SUIT WAS FILED BY AN ASSISTANT ATTORNEY GENERAL OF THE STATE OF LOUISIANA.
The defendants filed an application for supervisory writs with the First Circuit Court of Appeal. The court of appeal reversed the trial court and granted defendants' motions for a protective order, finding R.S. 18:1511.5 unconstitutional to the extent that it "authorizes the Board of Ethics for Elected Officials as the Supervisory Committee on Campaign Finance Disclosure `to file civil proceedings to collect the civil penalties'."
This court docketed the case as an appeal pursuant to Article V, § 5(D) of the Louisiana Constitution.[5]
CONSTITUTION
Article II, § 1 of the Louisiana Constitution provides that "the powers of government of the state are divided into three separate branches: legislative, executive, and judicial." Article II, § 2 states:
Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.
Article IV, § 5 defines the powers and duties of the governor. Section 5(A) provides:
The governor shall be the chief executive officer of the state. He shall faithfully support the constitution and laws of the state and of the United States and shall see that the laws are faithfully executed.
Therefore, under the Constitutional scheme, the governor is responsible for executing the laws, and no other branch of government may impinge upon this authority.
STATUTES
In 1975, the legislature first enacted the Campaign Finance Disclosure Act. La.R.S. 18:1481-1531. The stated purpose of the Act is "to provide public disclosure of the financing of election campaigns and to regulate certain campaign practices." La.R.S. 18:1482. Generally, the Act provides for the reporting of contributions and expenditures involved in campaigns for elective state and local public offices, prohibited practices and limitations, civil and criminal penalties for violations of the Act and the enforcement thereof, and the creation of the Supervisory Committee on Campaign Finance Disclosure.
Since the first enactment of the Act, the legislature has changed the membership of the Supervisory Committee a number of times.[6] The present composition of the *1034 Committee, and the one that is at issue in this case, was formed by the legislature under Act 59 of 1981, amending La.R.S. 18:1511.1 to provide:
A. The Supervisory Committee on Campaign Finance Disclosure is established. The Board of Ethics for Elected Officials as established in R.S. 42:1132, shall function as the supervisory committee to administer and enforce the provisions of this Chapter and the rules, regulations, and orders issued hereunder. The members of the Board of Ethics for Elected Officials shall constitute the supervisory committee.
La.R.S. 42:1132 establishes in the Department of Civil Service the Board of Ethics for Elected Officials and provides that the board shall be composed of five persons: one member appointed by the governor, who is either a retired or former Louisiana Supreme Court justice, court of appeal judge, or district court judge; two members, who are not public servants, elected by the House of Representatives; and two members elected by the Senate who are not public servants. This statute also provides that the Board, functioning as the Supervisory Committee on Campaign Finance Disclosure, shall administer and enforce the Campaign Finance Disclosure Act. La.R.S. 42:1132 C.
In addition to defining the members of the Committee, the Act sets out the powers and duties of the Committee. These duties include the authority to: 1) adopt and promulgate rules and regulations in accordance with the Administrative Procedures Act necessary to effectuate the provisions and purposes of the Act; 2) render advisory opinions concerning the application of the Act; 3) receive and file the reports, statements, documents and papers required to be filed under the Act; 4) conduct investigations concerning apparent or alleged violations of the Act; 5) institute civil proceedings to collect the civil penalties provided in the Act for violations of the Act; and, 6) forward information to the district attorney concerning knowing, willful and fraudulent violations of the Act. La.R.S. 18:1511.1-18:1511.6. Specifically, La.R.S. 18:1511.5 A(1) grants the following authority to the Committee:
When the results of the investigation by the supervisory committee indicate that a violation of this Chapter has occurred which is subject to civil penalties, the supervisory committee is authorized to file civil proceedings to collect the civil penalties provided in R.S. 18:1505.4 and R.S. 18:1505.5.
Because the Committee is composed in majority part of legislatively appointed members, and La.R.S. 18:1511.5 A grants to these members the authority to institute civil actions to collect civil penalties, the question arises as to whether this specific grant of authority impinges on the right of the governor to "execute the laws" and consequently violates the separation of powers provision of the Louisiana Constitution.
JURISPRUDENCE
The constitutionality of the Campaign Finance Disclosure Act was addressed by this court once before in Guidry v. Roberts, 335 So.2d 438 (La.1976). At that time the Committee was composed of the Secretary of the Senate, the Clerk of the House of Representatives and the legislative auditor. The function of the Committee included receiving and preserving campaign finance reports, initiating investigations into complaints of non-compliance with the provisions of the statute, and referring the matter *1035 to the attorney general who in turn referred it to the district attorney having jurisdiction of the offense. The Act provided only criminal sanctions for violations.
The issue in Guidry, as in the case sub judice, was whether the functions and powers entrusted to the legislatively appointed committee violated any power exclusively vested in the executive branch, especially the duty to "see that the laws are faithfully executed." Article IV, § 5(A). Guidry, 335 So.2d at 444.
In upholding the constitutionality of the Act, the court noted:
The powers granted these legislatively appointed instrumentalities ... pertain only to receipt, dissemination, and investigation of reports, and to referral of them to appropriate prosecutorial officersgovernmental activities which neither historically nor functionally fall within the exclusive power of the executive branch to "see that the laws are faithfully executed", Article 4, Section 5(A).[7]
The court in Guidry both relied on and distinguished Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In Buckley, the United States Supreme Court addressed the constitutionality of the Federal Election Campaign Act which provided for a Commission composed of legislatively appointed officials with the power to make rules and issue advisory opinions; receive, disseminate and investigate information; and, hold hearings and file civil suits for violations. The Buckley court held that:
Insofar as the powers confided in the Commission are essentially of an investigative and informative nature, falling in the same general category as those powers which Congress might delegate to one of its own committees, there can be no question that the Commission as presently constituted may exercise them..... But when we go beyond this type of authority to the more substantial powers exercised by the Commission, we reach a different result. The Commission's enforcement power to seek judicial relief, is authority that cannot possibly be regarded as merely in aid of the legislative function of Congress. A lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to `take Care that the Laws be faithfully executed.' Art. II, § 3.
96 S.Ct. at 691. The court concluded that the federal Constitution's appointments clause (Art. II, § 2, cl. 2) limits the power to appoint officers exercising executive functions to the President.
The court in Guidry distinguished Buckley on the fact that only the power to enforce the law (such as the power to institute civil actions to enforce the act) was held unconstitutional and noted that none of the powers granted to the Committee by Louisiana's Act were of this nature. Guidry, 335 So.2d at 446.
Subsequent to this court's decision in Guidry, the Legislature changed the membership of the Committee to the secretary of the Senate, the clerk of the House of Representatives, the secretary of state and the attorney general and gave these members the authority to institute civil proceedings to collect civil penalties for violations of the Act. 1980 La. Acts 786. In response to an inquiry from the Secretary of State, the Attorney General issued an opinion stating that "under the Louisiana Supreme Court's holding in Guidry and the United States Supreme Court case of Buckley v. Valeo, ... it is clear that the granting of the power to institute civil actions in the Supervisory Committee is a violation of the separation of powers provision of the Louisiana Constitution." Opinion No. 80-1384, January 23, 1981, p. 79.
*1036 The legislature then changed the composition of the Committee to its present form, the members of the Ethics Board, but left in place the Committee's power to institute civil actions. Act 59 of 1981; La.R.S. 18:1511.1, 18:1511.5.
This court also addressed the separation of powers issue in Guste v. Legislative Budget Committee, 347 So.2d 160 (La. 1977), where the authority of the legislature to grant the governor the right to appoint twenty-four of the twenty-eight members of the Legislative Budget Committee, as then provided by R.S. 39:311(A), was challenged as unconstitutional. The court held that the exercise by the governor of this power of appointment "does not make laws, nor does it so influence the law-making process that there is an indirect invasion of the legislative process." Guste, 347 So.2d at 165. The court also noted that the duties performed by the Budget Committee, such as preparing and submitting to the legislature fiscal legislation and budgetary planning, are not functions that are exclusive to the legislature or the executive in Louisiana. Id. Therefore, a violation of the appointments clause or the separation of powers clause did not exist. The court noted, however, that although it was not an issue in their case, "the principle of Buckley v. Valeo would invalidate a statute creating a committee to perform functions exclusively executive when the legislature named the members of the committee." Guste, 347 So.2d at 164, f.n. 5.
CONCLUSION
The authority to file a civil lawsuit has traditionally been held to constitute an execution of the laws. Buckley, supra; Guidry, supra. "To see that the laws are faithfully executed" is a power given to the governor under Art. IV, § 5(H) of the Louisiana Constitution. Article II, § 2 states that one branch of government may not exercise authority given to another branch. Under the Campaign Finance Disclosure Act the legislature gave itself the authority to appoint four of the five members of the Committee and then gave this Committee, with its legislatively appointed officials, the power to institute civil proceedings. La. R.S. 18:1511.1, 1511.5. The power of appointment of these officials by the legislature has been upheld as constitutional as long as these officials do not exercise functions exclusive to the executive branch. Guidry, supra. However, once these legislatively appointed officials are given the authority to exercise functions exclusive to the executive branch, i.e. file civil proceedings, a violation of the separation of powers provision, Article II, § 2 of the Louisiana Constitution, occurs.
The fact that the Committee is composed of the members of the Ethics Board, which functions as part of the executive branch, is irrelevant. What is important to the present case is the fact that the Committee is composed of members who are appointed by the legislature and the powers of this Committee include the authority to institute civil proceedings to enforce the law.
Plaintiff argues that unlike the federal constitution, the state constitution's provisions are not grants of power but instead are limitations on the otherwise plenary power of the people exercised through its legislature. In the exercise of its legislative power, the legislature may enact any legislation that the state constitution does not prohibit. To hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the legislature to enact such a statute. Dir. of La. Recovery Dist. v. Taxpayers, 529 So.2d 384 (La. 1988). See also Guste v. Legislative Budget Committee, supra.
These principles of law are correct, but do not avail plaintiff in this case. Article II, Sections 1 and 2 and Article IV, Section 5 of the Louisiana Constitution limit the power of the legislature to vest authority in a legislatively appointed committee to enforce a statute by filing a civil suit to collect civil penalties for violation of the statute.
The penalty provided in the statute is for the purpose of imposing punishment upon a violator of its provisions. The money recovered is not for restitution, compensation *1037 or indemnification but is strictly a penalty, fine or forfeiture imposed as punishment for willful disobedience of the law. The character of the penalty is not changed by the method through which it is imposed, whether by civil action or criminal prosecution. See McHugh v. Placid Oil Co., 206 La. 511, 19 So.2d 221 (1944).
Seeking punishment for violation of the law is clearly an executive function. The authority to exercise this function cannot be vested in a legislatively appointed committee. The constitutional scheme of separation of powers, and checks and balances, requires a separation of the power to enact laws and the power to exact punishment for the violation of such laws.
Plaintiff also argues that Article IV, Section 5(H)(1) does not grant the governor exclusive power to make appointments of members of boards and commissions in the executive branch because the power to make such appointments is given to the governor only where the appointment of such members is not otherwise provided by the constitution or by law.[8]
The issue in this case is not the power of the legislature to enact legislation providing for the appointment by the legislature itself of members of boards and commissions in the executive branch, but is the power of the legislature to vest such legislatively-appointed boards or commissions with the authority to exercise the exclusive executive function of enforcing the law by filing suit against alleged violators of the law.
Furthermore, the argument that the attorney general actually filed this suit is not persuasive. Suit was filed by the Louisiana Board of Ethics for Elected Officials, in its capacity as the Supervisory Committee on Campaign Finance Disclosure by virtue of the provisions of La.R.S. 18:1511.1, et seq. An assistant attorney general signed the petition as attorney for the Committee, but only in a representative capacity and at the direction of the Committee. The attorney general was allowed to intervene in this suit, but is merely acting in a representative capacity as counsel for a state board as provided by La.R.S. 42:261 A and to protect the state's interest in a case where the constitutionality of a statute is at issue. The issue in this case addresses the authority of the Committee to institute civil proceedings.
We conclude, therefore, as did the court of appeal, that La.R.S. 18:1511.5 is unconstitutional to the extent that it allows the Supervisory Committee on Campaign Finance Disclosure "to file civil proceedings to collect the civil penalties."
The judgment of the court of appeal is affirmed.
DIXON, C.J., dissents with reasons.
DENNIS, J., dissents.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice, dissenting.
By stating that the issue in this case is not the power of the Legislature to enact legislation providing for the appointment by the Legislature itself of members of boards and commissions in the executive branch, the majority impliedly concedes that under Article IV, § 5(H)(1) the legislature may pass laws providing for appointment by the legislature itself of members of boards and commissions in the executive branch. Thus, they find no violation of the gubernatorial appointment power provision of the constitution, Article IV § 5(H)(1).[1]
*1038 DIXON, Chief Justice (dissenting).
I respectfully dissent.
If the legislature has the power to appoint members of this committee, it has the power to authorize the governor to "perform other duties authorized by this constitution or provided by law." La.Const., Art. 4, § 5(K). (Emphasis added). Nothing in the Constitution prohibits the legislature from authorizing a board in the executive branch to file suit (in a court in the judicial branch) to enforce a law (enacted by the legislature). What they find constitutionally impermissible is "the power of the legislature to vest such legislatively appointed boards or commissions with the authority to exercise the exclusive executive function of enforcing the law by filing suit against alleged violators of the law." Thus, they do find a violation of the separation of powers clauses of the constitution, Article II, §§ 1 and 2.
With this latter conclusion I disagree. In my view the board's power or authority to exercise the exclusive executive function of enforcing the law by filing suit depends entirely upon whether the board is or is not a part of the executive branch. And in that regard I conclude the district court judge answered that question correctly: "1) The Board of Ethics for elected officials is part of the department of civil service; 2) The department of civil service is established in the executive branch of the government; 3) The Board of Ethics for Elected Officials is an executive branch board; ..."
For these reasons I dissent.
NOTES
[*] Pike Hall, Jr., Chief Judge of the Court of Appeal, Second Circuit, participated in this case in place of Associate Justice Harry T. Lemmon.
[1] 18:1505.2 A provides in part: "No person shall give, furnish, or contribute moneys, materials, supplies or make loans to or in support of a candidate or to any political committee, through or in the name of another, directly or indirectly...."

18:1505.1 C provides: "Failure to disclose or failure to disclose accurately any information required to be reported by this Chapter shall constitute a violation of this Chapter."
[2] 18:1505.5 states: "Except as provided in R.S. 18:1505.4, any person who knowingly and wilfully violates any provision of R.S. 1505.2 ... or any other provision of this Chapter shall be assessed a civil penalty for each violation. The amount of such penalty shall by: [sic] not in excess of five hundred dollars for each candidate for a major office and any treasurer or chairman of any committee or person supporting or opposing such a candidate; .... Each day of violation, if applicable, shall constitute a separate offense. Maximum civil penalties imposed under this Section shall be as provided in R.S. 18:1505.4(A)."

18:1505.4 B provides: "Any candidate, the treasurer or chairman of any political committee, or any other person required to file reports under this Chapter who knowingly and wilfully fails to disclose, or knowingly and wilfully fails to accurately disclose, any information required by this Chapter to be disclosed in the reports required herein, shall be assessed a civil penalty for each day until such information is disclosed by amendment to the appropriate report of such candidate, political committee, or other person. Such penalties shall be as provided in Subsection (A) above." 18:1505.4 A(2) provides: "The amount of such penalty shall be: (a) Not less than one hundred dollars per day, nor in excess of five hundred dollars per day, not to exceed ten thousand dollars, for each candidate for major office and any treasurer or chairman of any committee or person supporting or opposing such a candidate."
[3] Article II, Sections 1 and 2 refer to the separation of powers among the branches of government and Article IV, Section 5(A) refers to the governor's duty to "see that the laws are faithfully executed."
[4] In support of his intervention and position in this case, the Attorney General relies on La. Const. Article IV, Section 8; La.R.S. 42:261; La. R.S. 42:1134(3); La.R.S. 49:257 B; La.C.C.P. Art. 1880.
[5] Article V, § 5(D) states in part: "In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional...."
[6] Act 718 of 1975 created three supervisory committees: one for candidates for senatorcomposed of the secretary of the Senate, the legislative auditor, and the executive director of the Legislative Council; one for candidates for the House of Representativescomposed of the clerk of the House, the legislative auditor, and the executive director of the Legislative Council; and one for other candidates and for other persons required to file reportscomposed of the secretary of the Senate, the clerk of the House, the legislative auditor, and the executive director of the Legislative Council. Act 386 of 1976 changed the composition of the Supervisory committee to the secretary of the Senate, the clerk of the House of Representatives, the legislative auditor, and the executive director of the Louisiana Legislative Council. Act 786 of 1980 changed the Committee's membership to the secretary of the Senate, the clerk of the House of Representatives, the secretary of state, and the attorney general. Act 59 of 1981 established the present Committee which is composed of the members of the Ethics Board.
[7] Guidry did hold unconstitutional a provision of the Act which allowed a district attorney to prosecute only those violations that were referred to him by the Committee, holding that the Act unconstitutionally vested in the legislatively appointed committee the power to determine whether and which violations shall be criminally prosecuted, in violation of the exclusive power granted to district attorneys to prosecute offenses in his district under Article V, Section 26(B).
[8] Article IV, Section 5(H)(1) provides:

The governor shall appoint, subject to confirmation by the Senate, the head of each department in the executive branch whose election or appointment is not provided by this constitution and the members of each board and commission in the executive branch whose election or appointment is not provided by this constitution or by law.
[1] The majority is correct in this regard for in Guidry v. Roberts, 335 So.2d 438 (La.1976) we stated

Consequently, neither the functions entrusted to the supervisory committees, nor their method of legislative selection, violate the constitutional separation of powers between the legislative and executive branches. We therefore disagree in this respect with the court of appeal's holding to the contrary. 335 So.2d at 446. (Emphasis added.)
Thus, in Guidry we reversed the decree of the court of appeal and held the act there under consideration constitutional (except for the provision limiting prosecution of criminal violations to those recommended by the supervisory committee).