LOTTINGER, Judge.
This suit was brought by the State of Louisiana through the Board of Ethics for Elected Officials as the Supervisory Committee on Campaign Finance Disclosure against Douglas D. “Doug” Green and others for assessment of civil penalties for alleged violations of the Campaign Finance Disclosure Act, La.R.S. 18:1481-1531. From judgment denying motions by some of the defendants for protective orders based on the unconstitutionality of La.R.S. 18:1511.5[1], those defendants applied for supervisory writs from this court. In turn, this court granted writs of certiorari, assigned same for oral argument, and stayed all proceedings in the trial court pending further orders of this court.
FACTS
Plaintiff alleges in its petition for “Rule to Show Cause (Assessment of Civil Penalties)” that defendants “knowingly and willfully” concealed the true source of $2,155,-000.00 in loans received by the Doug Green Campaign Committee, Inc. (Green was the successful candidate for the Office of Commissioner of Insurance) in campaign reports covering the period from January 6, 1987 to December 21, 1987. The reports indicated the loans came from the defendants. However, plaintiff alleges they actually came from United Financial Services of Baton Rouge, Inc. Through corporate ownership, John Eicher, the major owner of United Financial Services of Baton Rouge, Inc., is also the major owner of Champion Insurance Company, a company subject to the regulations of the Louisiana Department of Insurance and its Commissioner. As a result, plaintiff brought this suit, claiming it was authorized to do so pursuant to La.R.S. 18:1511.1 et seq.
In conjunction with its petition, plaintiff filed interrogatories and requests for production of documents against all the defendants except the Campaign Committee and its officers. Plaintiff also noticed the taking of depositions and the issuance of subpoenas duces tecum as to several of the defendants. Generally, the subpoenas seek federal income tax returns, copies of financial statements, loan applications, copies of promissory notes, and other documents tending to show evidence of loans and payments relating to money advanced to the Campaign Committee.
Various defendants filed motions for protective orders seeking to avoid discovery by plaintiff because plaintiff did not have the constitutional authority to bring the lawsuit. In the trial court, defendants argued the separation of powers theory of La. *1187 Const. Art. II, § 2,[2] and the governor’s enforcement of the laws powers as provided by La. Const. Art. IV, § 5(A)[3] had been violated because the Supervisory Committee on Campaign Finance Disclosure, La.R. S. 18:1511.1 A [4], consisted of five members, four of whom were selected by the House of Representatives and the Senate, La.R.S. 42:1132[5]. More importantly, the Supervisory Committee was authorized by La.R.S. 18:1511.5 A to file civil proceedings to collect the civil penalties.
TRIAL COURT
In denying the protective orders, the trial court, in written reasons, said:
THE COURT CONCLUDES THAT IN THIS CASE THERE IS NO VIOLATION OF THE SEPARATION OF POWER MANDATES BASED ON THE FOLLOWING FINDINGS OF FACT: 1. THE BOARD OF ETHICS FOR ELECTED OFFICIALS IS PART OF THE DEPARTMENT OF CIVIL SERVICE; 2. THE DEPARTMENT OF CIVIL SERVICE IS ESTABLISHED IN THE EXECUTIVE BRANCH OF THE GOVERNMENT; 3. THE BOARD OF ETHICS FOR ELECTED OFFICIALS IS AN EXECUTIVE BRANCH BOARD; 4. THE BOARD OF ETHICS IS THE SUPERVISORY COMMITTEE AND THUS MUST *1188 ADMINISTER AND ENFORCE THE CAMPAIGN FINANCE DISCLOSURE ACT AS PROVIDED IN ITS RULES AND PROCEDURES; 5. THE LEGISLATURE HAS PLACED ENFORCEMENT AUTHORITY OF THE MATTERS WITHIN THE PURVIEW OF THE BOARD OF ETHICS AND “EACH ETHICS BODY” IN THE JUSTICE DEPARTMENT OF THE STATE. THE ENFORCEMENT OF THE PROVISIONS OF THE CAMPAIGN FINANCE DISCLOSURE LAW BY THE FILING OF LAWSUITS IS ENTRUSTED TO THE ATTORNEY GENERAL OF THE STATE OF LOUISIANA AS THE OFFICIAL ATTORNEY FOR ALL ETHICS COMMITTEES OR BODIES AND THERE IS NO DISPUTING THE FACT THAT THIS SUIT WAS FILED BY AN ASSISTANT ATTORNEY GENERAL OF THE STATE OF LOUISIANA. THE PROTECTIVE ORDER SOUGHT BY THE DEFENDANTS IS THEREFORE DENIED AND JUDGMENT WILL BE SIGNED ACCORDINGLY.
ASSIGNMENTS OF ERROR
In applying for writs, the relators contend the trial court erred:
1) in failing to recognize that the Board of Ethics for Elected Officials and the Supervisory Committee on Campaign Finance Disclosure are separate and distinct legal entities with differing powers, duties, and functions;
2) in holding that the grant of civil enforcement authority to the Supervisory Committee does not violate La. Const. Art. II, § 2; and
3) in finding that the Supervisory Committee is an ethics body and the Louisiana Attorney General is the party bringing this action.
I
The defendants contend that the constitutional defect in the structure of the Supervisory Committee is the grant of law enforcement power to a legislatively appointed body. Further, defendants argue that the Louisiana Constitution vests the authority and the responsibility “to see that the laws are faithfully executed,” La. Const. Art. IV, § 5(A), in the governor. As a natural consequence, this grant must include the power to appoint those who are charged with law enforcement responsibility. Therefore, a legislatively appointed body cannot enforce the law and plaintiff cannot file the instant lawsuit.
Adversely, plaintiff argues the Board of Ethics for Elected Officials acting as the Supervisory Committee is within the Department of Civil Service in the executive branch of state government, and thus, can enforce the law. Additionally, the staff of the Supervisory Committee is within the executive branch, and a special assistant attorney general filed this lawsuit. Also, with respect to the appointment of members of executive branch boards and commissions, the appointment authority is vested in the governor only if the power to make the appointment is not otherwise “provided by this Constitution or by law.” La. Const. Art. IV, § 5(H).[6] Lastly, plaintiff argues that the appointment by representatives of one branch of government of officers to serve in another branch of government does not violate the “separation of powers” clause of the Louisiana Constitution, citing State ex rel Guste v. *1189 Legislative Budget Committee, 347 So.2d 160 (La.1977).
The Attorney General of the State of Louisiana intervened in this proceeding in the trial court pursuant to La. Const. Art. IV, § 8, II2, which authorizes the attorney general to intervene in any action to protect the interest of the state. The constitutionality of acts of the legislature is deemed an interest of the state. The attorney general argues that the Supervisory Committee has no civil enforcement power; that the Supervisory Committee has no specific counsel authorized or assigned to it by the Act; that unless otherwise provided by law, the attorney general represents the state exclusively; that the attorney general is in the executive branch of government; and that the State of Louisiana as represented by the attorney general brought this suit.
II
For a clearer understanding of the issues before this court, it is necessary to briefly discuss the provisions and history of the Campaign Finance Disclosure Act (hereinafter sometimes referred to as the Act).
The Campaign Finance Disclosure Act, La.R.S. 18:1481-1531, was originally enacted as Act 718 of 1975.[7] The Act has as its stated purpose “to provide public disclosure of the financing of election campaigns and to regulate certain campaign practices.” La.R.S. 18:1482. Generally, the Act provides for the reporting of contributions and expenditures involved in campaigns for elective state and local public offices, prohibited practices and limitations, civil and criminal penalties and the enforcement thereof, the Supervisory Committee on Campaign Finance Disclosure, and the transportation of voters.
The constitutionality of the Act has been questioned only once before. See Guidry v. Roberts, 331 So.2d 44 (La.App. 1st Cir.), aff'd in part and rev’d in part, 335 So.2d 438 (La.1976). In Guidry, the Supreme Court affirmed this court’s decision to the extent the provisions in effect at that time placed an unconstitutional limitation on the power of the district attorney to prosecute criminal violations of the Act.
The initial legislation, Act 718 of 1975, created three supervisory committees: one for candidates for senator — composed of the secretary of the Senate, the legislative auditor, and the executive director of the Legislative Council; one for candidates for the House of Representatives — composed of the clerk of the House, the legislative auditor, and the executive director of the Legislative Council; and one for other candidates and for other persons required to file reports — composed of the secretary of the Senate, the clerk of the House, the legislative auditor, and the executive director of the Legislative Council.
Under Act 386 of 1976, the Supervisory Committee was created and was composed “of the secretary of the Senate, the clerk of the House of Representatives, the legislative auditor, and the executive director of the Louisiana Legislative Council.”
By Act 786 of 1980, the Legislature changed the membership of the Supervisory Committee to “the secretary of the Senate, the clerk of the House of Representatives, the secretary of state, and the attorney general.” Additionally, the Supervisory Committee was given the authority to enforce the civil penalties by filing civil proceedings.
In response to an inquiry from the Secretary of State, the Attorney General, on January 23, 1981, issued opinion No. 80-1384, and in part held “that the granting of the power to institute civil proceedings in the Supervisory Committee is a violation of the separation of powers provision of the Louisiana Constitution.”
By Act 59 of 1981, the Legislature changed the name of the supervisory committee from “Supervisory Committee, Campaign Finance Disclosure Act” to “Supervisory Committee on Campaign Finance Disclosure,” and furthér provided that “[t]he *1190 Board of Ethics for Elected Officials as established in R.S. 42:1132, shall function as the supervisory committee to administer and enforce the provisions of this Chapter and the rules, regulations, and orders issued hereunder. The members of the Board of Ethics for Elected Officials shall constitute the supervisory committee.” La.R.S. 42:1132 establishes in the Department of Civil Service the Board of Ethics for Elected Officials to be composed of five persons. The governor appoints one member, who is either a retired or former Louisiana Supreme Court justice, court of appeal judge, or district court judge. Two members, who are not public servants, shall be elected by the House of Representatives, and two members, who are not public servants, shall be elected by the Senate.
The sections of the Act in controversy are the Supervisory Committee, La.R.S. 18:1511.1 A, and the civil enforcement authority of the Supervisory Committee, La. R.S. 18:1511.5 A.
in
The Louisiana Constitution is clear that the powers of our state government are divided into three separate branches: legislative, executive, and judicial. La. Const. Art. II, § 1. Further, our constitution clearly provides: “... no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.” La. Const. Art. II, § 2. Generally it is understood that the legislature makes the laws, the executive enforces the laws, and the judiciary interprets the laws. To make this clearer as to the executive branch, the Louisiana Constitution provides: “[t]he governor shall be the chief executive officer of the state. He shall faithfully support the constitution and laws of the state and of the United States and shall see that the laws are faithfully executed.” La. Const. Art. IV, § 5(A). We conclude “faithfully execute” recognizes the long understood principle that the executive branch has the exclusive power to execute the laws. Guidry v. Roberts, 335 So.2d at 444.
IV
As noted above, plaintiff rests its case on the theory that the Supervisory Committee is within the executive branch of state government and that the legislature can appoint members to boards and commissions within the executive branch of state government.
Defendants refine the issues in this case to whether a legislatively appointed board or commission can enforce the law, irrespective of the branch of government in which it is located. This refinement of the issues is the correct approach. Guidry v. Roberts, 335 So.2d at 444.
In Guidry, the Supreme Court drew a distinction between a legislatively appointed committee conducting investigations vis a vis one that institutes civil proceedings to enforce the law.
The membership of the supervisory committees in Guidry was made up of legislative officers-employees. In holding that the vast majority of Act 718 of 1975 was constitutional, and in its discussion of the separation of powers issue, the Louisiana Supreme Court said:
The intermediate court held that the statutory administrative powers entrusted to the reporting officials and supervisory committees constituted a delegation of the power to execute the laws. This could not, in that court’s view, be en-trused [sic] to a legislatively appointed instrumentality without violating the executive function of the governor to “see that the laws are faithfully executed,” Article 4, Section 5(A), through officers or agencies of the executive branch, Article 4, Section 1(A), or officials appointed by him, Article 4, Section 5(H).
At the outset, it is clear that the reporting officials (the secretary of the Senate, the clerk of the House, and the legislative auditor, 1482(12)) and the members of the supervisory committees (these officials and the executive director of the Legislative Council, 1492A) designated by the statute are all selected by the legislative branch. The query, however, is whether the functions and powers entrusted to them violate any power *1191 exclusively vested in the executive branch, especially the duty of the governor to “see that the laws are faithfully executed.” Article 4, Section 5(A).
* * * * * #
Clearly, the power of the reporting officials and committees to receive campaign-finance reports for public access to them performs no function and usurps no power exclusive to the executive branch. Not so unambiguously perhaps, the reviewing of the reports for compliance with the act, and the investigation of complaints of violations of it, do not invade any exclusive executive prerogative “to see that the laws are faithfully executed,” Article 4, Section 5(A), any more than do, for instance, legislative investigations or audits of the fiscal records of the state, Article 3, Section 11.
In Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the United States Supreme Court considered and rejected similar contentions raised before it with regard to a federal campaign-finance act similar in these respects to ours. The court held that “recordkeep-ing, disclosure and investigative functions,” 96 S.Ct. at 678, “functions relating to the flow of necessary information —receipt, dissemination, and investigations”, 96 S.Ct. at 691, may be validly exercised by a legislatively appointed committee, 96 S.Ct. at 691. Thus, they do not violate any executive function to execute laws.
The court drew a clear distinction between these powers, as contrasted with more substantial powers to enforce the law (such as the power to institute civil actions to enforce the act). Only these latter functions were held to violate the power of the executive branch, if exercised by a legislatively appointed body instead of an executive agency.
As our summary above indicates (see also footnote 3), none of the powers granted by the Louisiana act to the reporting officials or supervisory committees are of this latter nature — i.e., those by which the laws are actually executed by the legislatively appointed committees. The powers granted these legislatively appointed instrumentalities instead pertain only to receipt, dissemination, and investigation of reports, and to referral of them to appropriate prosecutorial officers — governmental activities which neither historically nor functionally fall within the exclusive power of the executive branch to “see that the laws are faithfully executed,”, [sic] Article 4, Section 5(A). See Buckley v. Valeo, cited above, at 96 S.Ct. at 691.
No authority is cited to us contrary to this holding.
No authority is cited to us that rests solely in the executive branch the receipt and dissemination of reports with regard to valid election laws, or that vests solely within executive control investigation of violations thereof. (As a matter of fact, this court has in the past disapproved efforts to vest exclusive control of the election machinery in gubernatorial appointees. State ex rel. Ward v. Board of Supervisors of Elections, 186 La. 949, 173 So. 726 (1937). Ours is a system not only of separation of powers among the branches of government, but also of checks and balances by the other branches to the powers of each branch.)
In summary, we cannot read our state’s separation of powers provision as inflexibly prohibiting to none but the executive branch the power to receive election-finance reports and complaints of election-law violations, to evaluate them, and to forward to prosecutorial officers any violations suspected as a result.
Consequently, neither the functions entrusted to the supervisory committees, nor their method of legislative selection, violate the constitutional separation of powers between the legislative and executive branches. We therefore disagree in this respect with the court of appeal’s holding to the contrary. (Emphasis by the Supreme Court and footnotes omitted.) 335 So.2d at 444-446.
In State ex rel. Guste v. Legislative Budget Committee, 347 So.2d 160 (La.1977), plaintiff contended that the authority of the governor to appoint twenty-four of *1192 the twenty-eight members of the Legislative Budget Committee, as then provided by La.R.S. 39:311(A), violated the Appointments Clause, La. Const. Art. IV, § 5(H), and the Separation of Powers article, La. Const. Art. II, §§ 1 and 2. In Guste the Supreme Court again focused its inquiry on whether an exclusive power was being exercised by another branch of government. In finding no constitutional violation, the court said:
1. The Appointments Clause
Plaintiff contends that the Legislative Budget Committee solely performs legislative functions and that since the “appointments clause” of the Louisiana Constitution limits the governor’s power of appointment to the appointment of heads of departments or members of commissions in the executive branch of government, he is precluded from appointing members to this “legislative” committee. The appointments clause is contained in Article IV § 5(H) of the Constitution and provides:
“(1) The governor shall appoint, subject to confirmation by the Senate, the head of each department in the executive branch whose election or appointment is not provided by this constitution and the members of each board and commission in the executive branch whose election or appointment is not provided by this constitution or by law.
“(2) Should the legislature be in regular session, the governor shall submit for confirmation by the Senate the name of an appointee within forty-eight hours after the appointment is made. Failure of the Senate to confirm the appointment, prior to the end of the session, shall constitute rejection.
“(3) If the legislature is not in regular session, the governor may make interim appointments, which shall expire at the end of the next regular session, unless submitted to and confirmed by the Senate during that session.
“(4) A person not confirmed by the Senate shall not be appointed to the same office during any recess of the legislature.”
Plaintiff relies upon the recent United States Supreme Court decision of Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In Buckley the United States Supreme Court construed the federal Constitution’s appointments clause (Art. II § 2, cl. 2) to limit the power to appoint officers exercising executive functions to the President. That case does not support plaintiff’s position. The federal article differs from our constitutional provision and was utilized in Buckley to prohibit the legislative body from appointing officials to serve on a commission. The court found that members of the Federal Election Commission (granted by statute both rule-making, policy-making, investigative and enforcement power) could not constitutionally be appointed by the legislature, but were officers whose appointment was controlled by Art. II § 2, cl. 2 of the United States Constitution. The separation of powers question in the Buckley case was not whether the executive could appoint legislators to a “commission,” but whether the legislature could name executive officers to enforce its laws.
Plaintiff’s argument that the appointments clause limits the governor to appointing only officials exercising executive powers is based upon a misconception of the nature of our state Constitution. The federal Constitution is a document of “enumerated powers” (Amendment X, U.S. Const.). The Louisiana Constitution is different. Complete legislative power, except as limited by the Constitution, lies within the state legislature:
“A general principle of judicial interpretation of a state constitution is that, unlike the federal constitution, a state charter’s provisions are not grants of power, they are rather limitations on the power of the people exercised through the state legislature. In its exercise of the entire legislative power of the state, the legislature may enact any legislation that the state constitution does not prohibit. Thus, to hold *1193 legislation invalid under the state constitution, it is necessary to rely upon some particular constitutional provision that limits the power of the legislature to enact the statute assailed.” In re Gulf Oxygen Welder’s Supply Profit Sharing Plan and Trust Agreement, 297 So.2d 663, 665 (La.1974).
See also Hainkel v. Henry, 313 So.2d 577 (La.1975); Kane v. Louisiana Commission on Governmental Ethics, 250 La. 855, 199 So.2d 900 (1967).
Involved in this case is the legislative power to grant the governor the right to appoint a number of legislators to serve on the budget committee. Art. IV § 5(H) cannot be construed to mean that the governor can appoint to these and only these executive offices. The section does not provide that the governor may appoint executive officials; nor does it prohibit other appointments by the governor. In fact, Art. IV § 5(K) of the Louisiana Constitution provides that the governor “shall have other powers and perform other duties authorized by this constitution or provided by law..” Under R.S. 39:311 the governor merely appoints legislators, already duly elected, to serve on a committee whose function is to aid in the cooperation between the legislative and executive branches on matters pertaining to the state budget. Since the appointments clause does not operate to restrict the legislative power to enact R.S. 39:311(A), and does not limit the power of the executive to appoint, it does not affect the constitutionality of R.S. 39:311 unless there is a violation of separation of powers doctrine.
II. The Separation of Powers Article
The Separation of Powers (distribution of powers) article of the Constitution provides:
“Section 1. The powers of government of the state are divided into three separate branches: legislative, executive, and judicial.
“Section 2. Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.” La. Const. 1974, Art. II §§ 1 and 2.
As the plain language of section 2 indicates, this provision of the Constitution is violated only if one branch of government or its members exercises power belonging to either of the others. The plaintiff alleges that the clause is violated because the governor is exercising legislative authority by appointing twenty-four of twenty-eight members of this “legislative” committee. This argument is without merit. The committee was established and exists as a result of a statute enacted by the legislature. All of the members of the committee are legislators. The legislature determined the method of selection and authorized the governor to appoint twenty-four members of the committee from its own number.
The legislative power is the power to make laws. As stated in Springer v. Government of Philippine Islands, 277 U.S. 189, 202, 48 S.Ct. 480, 482, 72 L.Ed. 845, 849 (1928): “Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions.”
In the federal system it is clear that the legislature may not appoint officers to enforce its laws (Buckley v. Valeo, supra; Springer v. Philippine Islands, supra; see Guidry v. Roberts, 335 So.2d 438 (La.1976)), because it would invade the exclusive realm of the executive. In the case before us, does the appointment of legislators by the governor invade the exclusive realm of the legislature? We think not. The exercise of such power of appointment does not make laws, nor does it so influence the law-making process that there is an indirect invasion of the legislative process.
The Legislative Budget Committee in the exercise of its duties (R.S. 39:312) gathers information about the fiscal affairs of the state, works with the execu *1194 tive in the preparation of the state budget (which the governor must prepare and submit to the legislature pursuant to Art. VII § 11, La. Const. 1974 and R.S. 39:41) and makes such reports and recommendations to the legislature as the committee determines. The members serve for a term of four years. R.S. 39:311.
The preparation and submission to the legislature of fiscal legislation and budgetary planning are not exclusive functions of either the legislature or the executive in Louisiana. The executive must prepare (Art. VII § 11, La. Const.1974) but only the legislature can enact the appropriations bill.
It could not have been contemplated that the doctrine of separation of powers should prevent a cooperative effort by the executive and legislative branches in fiscal planning for the state.
Since we find no violation of the appointments clause or the separation of powers doctrine, the judgment of the district court is affirmed. (Emphasis by Supreme Court and footnotes omitted.) 347 So.2d at 163-165.
We find no merit in plaintiff’s reliance on the Guste decision. Simply stated, neither the facts nor the holding of Guste dealt with the exercise by one branch of government of power belonging exclusively to another branch of government. However, the court did state that “[t]he principle of Buckley v. Valeo would invalidate a statute creating a committee to perform functions exclusively executive when the legislature named the members of the committee.” Guste, 347 So.2d at 164 n. 5.
The difference between the Guidry case and the case sub judice is that the authority to file civil proceedings to collect the civil penalties, i.e., enforce the law, exists in this case, whereas, in Guidry, the committees did not have enforcement authority. Importantly, in discussing Buckley v. Valeo, the court in Guidry said:
The court drew a clear distinction between these powers [recordkeeping, disclosure, receipt and dissemination of information, and investigations], as contrasted with more substantial powers to enforce the law (such as the power to institute civil actions to enforce the act). Only these latter functions were held to violate the power of the executive branch, if exercised by a legislatively appointed body instead of an executive agency. (Emphasis by Supreme Court). 335 So.2d at 446.
If legislative appointees are empowered to file civil suits to collect the civil penalties provided under the Act, such action would be enforcing the provisions of the Act. By entrusting legislative appointees with the power to enforce the law, the legislative branch is attempting to exercise powers belonging exclusively to the executive branch in violation of Article II, Section 2. Therefore, we conclude that to the extent that La.R.S. 18:1511.5 authorizes the Supervisory Committee^ “to file civil proceedings to collect the civil penalties,” it is unconstitutional.
V
There is no distinction to be drawn between the Board of Ethics for Elected Officials and the Supervisory Committee on Campaign Finance Disclosure. As above noted, it matters not whether the Supervisory Committee functions through the Board of Ethics for Elected Officials and in which branch of government it exists. What matters is who appoints the membership and the powers exercised.
VI
We find no merit in plaintiff's argument, as well as that of the attorney general, that this suit was filed by an assistant attorney general, a member of the executive branch. As clearly stated in the petition, this suit was filed by the Louisiana Board of Ethics for Elected Officials, in its capacity as the Supervisory Committee on Campaign Finance Disclosure by virture of the provision of La.R.S. 18:1511.1, et seq. Though one of the attorneys signing the petition may be an assistant attorney general, the signatures at the end of the petition are as follows:
*1195 SUPERVISORY COMMITTEE ON CAMPAIGN FINANCE DISCLOSURE BY ATTORNEYS:
/s/ Maris LeBlanc McCrory Maris LeBlanc McCrory
/s/ R. Gray Sexton R. Gray Sexton
7434 Perkins Road, Suite-B Baton Rouge, La. 70808-4379
Telephone: (504) 765-2314
There is no indication that either of these attorneys was acting as an assistant attorney general. Be that as it may, the plaintiff in this proceeding is not the Attorney General of Louisiana. At most, the attorney general is merely representing, as does any other attorney when suit is filed, a client, and the authority of the client to file a lawsuit is the issue.
VII
Plaintiff also cites two out-of-state cases in support of its arguments: Parcell v. Governmental Ethics Commission, 639 F.2d 628 (10th Cir.1980) and Caldwell v. Bateman, 252 Ga. 144, 312 S.E.2d 320 (1984). On close review, we conclude that neither case is applicable. In Parcell, the Kansas Governmental Ethics Commission had no means by which to enforce compliance or penalize violators of the act other than investigate and report to those who had authority to enforce. In Caldwell, the Georgia Constitution provided that “[t]he legislative, judicial and executive powers shall forever remain separate and distinct, and no person discharging the duties of one, shall, at the same time, exercise the functions of either of the others, except as herein provided.” The Georgia Supreme Court found that there was no dual service. The mere appointment by a member of the legislative branch of a non-legislator to an executive commission was not a simultaneous discharge of duties and functions against which the Georgia constitutional doctrine of separation of powers was directed.
Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed. To the extent that La.R.S. 18:1511.5 authorizes the Board of Ethics for Elected Officials as the Supervisory Committee on Campaign Finance Disclosure “to file civil proceedings to collect the civil penalties,” it is declared unconstitutional. Protective orders as prayed for by the defendants-relators are granted. Costs in the amount of $261.31 are assessed to plaintiff-respondent.
REVERSED AND RENDERED.

. La.R.S. 18:1511.5 provides:
A. When the results of the investigation by the supervisory committee indicate that a violation of this Chapter has occurred which is subject to civil penalties, the supervisory committee is authorized to file civil proceedings to collect the civil penalties provided in R.S. 18:1505.4 and R.S. 18:1505.5. Except as provided in R.S. 18:1511.7, these proceedings shall be filed in the district court of the parish in which the candidate, chairman or treasurer of the political committee, or other person required to file reports is domiciled. The proceedings shall be by rule to show cause and shall be conducted pursuant to the relevant provisions of the Louisiana Code of Civil Procedure.
B. In determining the amount of the civil penalty to be assessed, the district court shall take into consideration, where applicable, the reason for the failure to file timely, or the reason for failing to disclose required information, or the reason for inaccurately disclosing required information; the nature of the office sought by the candidate, or the nature of the office or offices sought by a candidate supported or opposed, in the case of a political committee or other person; the significance of the information undisclosed or, where appropriate, inaccurately disclosed to the voting public; and whether or not the candidate, chairman or treasurer of the political committee, or other person actually has filed a report or disclosed such information prior to the election or prior to the institution of the rule to show cause.
C. A judgment of a district court assessing such civil penalties may be appealed suspen-sively to the appropriate court of appeal according to the provisions of the Louisiana Code of Civil Procedure.
D. A judgment assessing civil penalties shall become executory when all delays for appeal have expired according to the Louisiana Code of Civil Procedure, and may be enforced as any other money judgment; however, the proceeds of such civil penalties shall be paid directly to the treasurer of the state of Louisiana.

. La. Const. Art. II, § 2 provides:
Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.

. La. Const. Art. IV, § 5(A) provides:
The governor shall be the chief executive officer of the state. He shall faithfully support the constitution and laws of the state and of the United States and shall see that the laws are faithfully executed.

. La.R.S. 18:1511.1 A provides:
The Supervisory Committee on Campaign Finance Disclosure is established. The Board of Ethics for Elected Officials, as established in R.S. 42:1132, shall function as the supervisory committee to administer and enforce the provisions of this Chapter and the rules, regulations, and orders issued hereunder. The members of the Board of Ethics for Elected Officials shall constitute the supervisory committee.

. La.R.S. 42:1132 provides:
A. Board established. There is hereby established in the Department of Civil Service the Board of Ethics for Elected Officials to be domiciled in the city of Baton Rouge.
B. Membership and terms. (1) The board shall consist of five persons to be selected as follows:
(a) The governor shall appoint one member, who shall be a retired or former justice of the Louisiana Supreme Court, or a retired or former judge of a court of appeals or district court of this state.
(b) Two members shall be elected by the House of Representatives, who shall not be public servants.
(c) Two members shall be elected by the Senate, who shall not be public servants.
No person shall be eligible for election or appointment who has been registered as a lobbyist before the legislature pursuant to Part III of Chapter 1 of Title 24 of the Louisiana Revised Statutes within two calendar years of the date of appointment. Should any member serving on the board thereafter register, he shall have been deemed to have resigned his position on the board.
(2) The persons serving on the Louisiana Board of Ethics for State Elected Officials on March 31, 1980, shall serve as initial members of the Board of Ethics for Elected Officials and shall be deemed to be the initial appointment or election of the governor, Senate, or House of Representatives based on the appointment or election to the Louisiana Board of Ethics for State Elected Officials to serve until the terms as established by such appointment or election expire. One additional member shall be elected by the Senate for an initial two-year term and one additional member shall be elected by the House of Representatives for a six-year term; such terms to commence on April 1, 1980. Thereafter all members shall serve for a term of six years.
(3) Any vacancy occurring on the board shall be filled in the same manner as the original appointment for the remainder of the term.
(4) No former board member may become a qualified candidate for an elected office within six months of the termination of his term on the board.
(5) No elected official or former elected official within six months of the termination of his term may serve as a member of the board.
C. Jurisdiction. The board shall administer and enforce the provisions of this Chapter and the rules, regulations, and orders issued hereunder with respect to elected officials. In addition, the board, functioning as the Supervisory Committee on Campaign Finance Disclosure, shall administer and enforce the provisions of Chapter 11 of Title 18 of the Louisiana Revised Statutes, and the rules, regulations, and orders issued thereunder.

. La. Const. Art. IV, § 5(H) provides:
(1) The governor shall appoint, subject to confirmation by the Senate, the head of each department in the executive branch whose election or appointment is not provided by this constitution and the members of each board and commission in the executive branch whose election or appointment is not provided by this constitution or by law.
(2) Should the legislature be in regular session, the governor shall submit for confirmation by the Senate the name of an appointee within forty-eight hours after the appointment is made. Failure of the senate to confirm the appointment, prior to the end of the session, shall constitute rejection.
(3) If the legislature is not in regular session, the governor may make interim appointments, which shall expire at the end of the next regular session, unless submitted to and confirmed by the Senate during that session.
(4) A person not confirmed by the Senate shall not be appointed to the same office during any recess of the legislature.

. Act 718 of 1975 has been amended several times: Act 386 of 1976, Act 137 of 1978, Act 786 of 1980, Acts 59 and 716 of 1981, Acts 266 and 652 of 1982, Acts 466 and 492 of 1984, Act 669 of 1986, and Acts 722, 831 and 757 of 1987.